R. E. THOMPSON and another *vs.* WINONA HARVESTER WORKS.

October 2, 1889.

Partnership—Assignment in Insolvency.—October 13, 1886, one member of an insolvent firm consisting of two persons, whose partnership goods had been attached the day previous, made an assignment of the firm property, and of his own separate estate, for the benefit of creditors. The whereabouts of his partner were unknown to him, and in the deed of assignment it was stated that he had absconded. The deed, with the written acceptance of the assignees thereto appended, was filed in the proper office upon the same day. The bond required by law was executed by the assignees and their sureties, duly approved, and filed October 16th. On

the 23d, 11 days after the attachment, the absent partner, who had returned in the mean time, subscribed and acknowledged the same instrument, thereby surrendering his individual property to the jurisdiction of the court for the purposes of the trust. *Held* that, as this individual property was not brought into court within the period of 10 days immediately following the attachment, the proceeding was invalid and ineffectual as an assignment under the insolvency act, (Laws 1881, *c.* 148.)

Cross appeals from a judgment of the district court for Fillmore county, *Farmer*, J., presiding, sustaining defendant's title to the notes transferred to it under the agency contract, as stated in the opinion, and setting aside, as an unlawful preference, the chattel mortgage mentioned in the opinion.

*H. R. Wells* and *B. A. Man*, for plaintiffs.

*Wilson & Bowers*, for defendant.

COLLINS, J. The plaintiffs, asserting themselves to be the assignees of J. H. and G. H. Nepstad, copartners doing business under the firm name of Nepstad Bros., brought this action to recover possession of a number of promissory notes (or their value, if possession could not be had) made by various parties, payable to said firm, and also to invalidate and set aside a mortgage executed and delivered to defendant by said firm upon its personal property; which notes had been indorsed and transferred, and the mortgage executed and delivered, in violation of the terms of that part of chapter 148, Laws 1881, concerning fraudulent preferences by insolvent debtors, as plaintiffs claim. The facts seem to be that said Nepstad Bros. had been selling the defendant's agricultural implements and machinery as agents and upon commission, for some time prior to October 2, 1886, and were also indebted to defendant upon open account. They were then, and for months had been, insolvent. On that day the defendant obtained the notes in question upon its agency or commission contract, and took the chattel mortgage to secure a firm note for the amount due upon account. On the 12th, the firm property was seized and levied upon by virtue of a writ of attachment issued in an action in which Nepstad Bros. were defendants, and one of their firm creditors plaintiff. G. H. Nepstad was then, and for several days thereafter remained, absent; his whereabouts, or his intention as to a return to

his place of business and residence, being unknown to his partner. Upon the next day (October 13th) the partner in charge of the business (J. H. Nepstad) made the assignment herein involved. From an inspection of this document it will be observed that in form it was prepared, with a single exception, as if to be immediately executed by both members of the firm. This exception was a recital to the effect that G. H. Nepstad had absconded. It was signed by J. H. Nepstad individually, and by him in the firm name. He also acknowledged its execution as his free act and deed. The plaintiffs, as assignees, immediately signified their acceptance of the trust; and the deed of assignment, with the written acceptance, was filed in the office of the clerk of the district court on the day the same was executed, October 13th. Three days later the statutory bond required of the assignees was made, approved, and filed. On October 23d, *eleven* days after the attachment before mentioned, the same instrument, then on file as before stated, was subscribed and acknowledged by G. H. Nepstad, who had returned in the mean time. There is nothing in this case, if we may except the fact that this suit has been brought, which indicates in any manner that these plaintiffs have ever accepted or qualified as the assignees of G. H. Nepstad in his individual capacity. From a judgment entered upon findings of fact and an order directing part of the relief demanded in the complaint, both parties appeal.

As we regard the case, but one question need be discussed; and that is the validity of the assignment under the insolvency act of 1881. If ineffectual and insufficient when tested by the provisions of that statute, the plaintiffs cannot recover under any circumstances, and the judgment appealed from must be reversed. Admitting, for the purposes of further consideration, that the circumstances were such as to justify an assignment of the firm property by one of the partners, and that the action taken on October 13th was sufficient to transfer the partnership property, as well as that individually held by the partner who signed the deed, it is quite evident that, up to the time of its execution on October 23d by the other member of the firm, its sole and only effect had been to convey the assets of Nepstad Bros. and the separate estate of one of the partners. It was

these assets and this estate which were accepted by the plaintiffs on
October 13th.    And it was for the faithful execution of this trust—
not for some other or additional one to be imposed in the future—
that the bond was made and approved three days thereafter.    It was
on October 23d, and not before, that the absentee submitted himself
and his property to the jurisdiction of the court for the purposes of
the trust.    It was not until the statutory period of 10 days following
the seizure,—and within which the duty to assign is laid upon, and
the privilege of voluntarily surrendering his estate is with, the insolv-
ent,—that all of the property subject and liable to the claims of the
creditors of the firm of Nepstad Bros. was brought into court; and,
unless we regard the commencement of this action as proof of the
fact, there is absolutely nothing to show that these plaintiffs have
ever accepted as the assignees of the separate estate of G. H. Nep-
stad, by filing a bond in which his estate was considered, or other-
wise.    Under the rule laid down in *Kingman* v. *Barton*, 24 Minn. 295 ;
*Swart* v. *Thomas*, 26 Minn. 141, (1 N. W. Rep. 830,) (cases under
the act of 1876, but in point here;) *Fairbanks* v. *Whitney*, 36 Minn.
305, (30 N. W. Rep. 812,) it is difficult, perhaps, to say exactly when
or how these plaintiffs qualified or became the assignees of an estate
not conveyed to them for several days subsequent to the execution,
approval, and filing of a bond in another proceeding, in furtherance
of the object of a deed in which the statement was made prominent
that the person for whom they now claim to act had absconded.    But,
if they are assignees of this man's separate estate, and may be re-
garded as having accepted the trust on October 23d, the full assign-
ment demanded by the terms of the law was not made until that day.
*May* v. *Walker*, 35 Minn. 194, (28 N. W. Rep. 252,) and, more in
point upon the precise question presented, *In re Allen, supra*, p. 430.
It is argued by the plaintiffs' counsel that because G. H. Nepstad
had no separate property, the assignment of the 13th should be held
complete under the insolvency act.    There was no testimony offered
tending to show that his entire estate was conveyed by the assign-
ment of the partnership effects, but, had there been, it would have
proved of no value, for in these cases the rights of the creditors must
not be left in a state of uncertainty nor made dependent upon the

existence or non-existence of any extraneous fact. *In re Bird*, 39 Minn. 520, (40 N. W. Rep. 827.) Creditors cannot be asked to investigate any fact in order to determine the real character of an assignment purporting to be for their benefit.

The case must, therefore, turn upon an inquiry as to whether the execution of the conveyance, upon the 23d, by G. H. Nepstad, can be held to relate back to the act of his partner on the 13th. It seems impossible to discover any grounds upon which to rest the assertion that it can be, or that it was anything more than an independent step, as distinct and disconnected as if found in a separate instrument. With the concession hereinbefore granted to the plaintiffs, it may be true that all of the property of the copartners, both joint and several, was *in custodia legis* October 23d, and thereafter subject to disposal in accordance with the law. But the same could be said under many other circumstances. To illustrate, if neither of these debtors had assigned his individual property until upon a day subsequent to the period fixed for them, and within which they are called upon, to surrender to assignees of their own selection, if they wish to avoid the appointment of a receiver, the failure of either and each of these insolvent debtors to make the required assignment within the 10 days following the attachment, or to institute proceedings to vacate the same, fully authorized the creditors to apply for a receiver. *Maxfield* v. *Edwards*, 38 Minn. 539, (38 N. W. Rep. 701.) It follows that when the right of the creditors to a receiver becomes perfect through the debtor's default, the privilege previously accorded the debtors, of voluntarily assigning, no longer exists. The statute declaring that an assignment must be made within 10 days is imperative, and the period of time cannot be enlarged to suit the circumstances or convenience of an insolvent party.

Judgment reversed.